UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Ft. Pierce Division

Case Number: **12-14208-CIV-MARTINEZ-LYNCH**

BLACKHAWK YACHTING, LLC, as Owner
of the M/Y DESTINY, an 86' Merritt Motor
Yacht,

      Plaintiff,

vs.

TOGNUM AMERICA, INC., f/k/a MTU
DETROIT DIESEL, INC., and MTU
FRIEDRICHSHAFEN GmbH,

      Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

THIS CAUSE came before the Court upon Defendants Tognum America, Inc. and MTU Friedrichshafen GmbH's Motion to Dismiss Plaintiff Blackhawk Yachting, LLC's Second Amended Complaint (D.E. No. 42). Defendants Tognum America, Inc., f/k/a MTU Detroit Diesel, Inc. ("Tognum") and MTU Friedrichshafen GmbH's ("MTU") (collectively "Defendants") seek dismissal of Plaintiff Blackhawk Yachting, LLC's ("Plaintiff") Second Amended Complaint (D.E. No. 36) pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons set forth below, this Court grants in part and denies in part Defendants' motion to dismiss.

**I.**    **Background**

Plaintiff's Second Amended Complaint alleges it is the owner of the M/Y Destiny (the "Vessel"), an 86-foot Merrit luxury motor yacht, powered by marine engines designed, manufactured, distributed, retailed, serviced, inspected, and/or warehoused by Defendants. (D.E.

No. 36 at ¶¶ 2, 3, 11). Plaintiff further alleges that during all material times, Defendants were "experiencing issues with their engine systems, including but not limited to the design of the fuel injector system, causing significant vibration problems on vessels of similar size to [Plaintiff's] and . . . were in the process of modifying or altering the design of the system to resolve problems associated with excessive vibration." *Id.* at ¶ 31.

Plaintiff claims that before the Vessel was manufactured and sold to Plaintiff, MTU sold the engines to Tognum "for resale to vessel manufacturers and the general public." *Id.* at ¶ 34. Additionally, Defendants' engines were sold with a written warranty "providing that the Defendants' engine systems would be free from defects in material and workmanship for a period of 24 (twenty-four) months from the date of delivery to the first retail purchaser." *Id.* at ¶ 36.

Plaintiff claims that Tognum "incorporated, adopted and became liable for any MTU manufacturer's warranty" through its actions during the sale of the engine systems and by assuming responsibility for any repairs of the engine systems. *Id.* at ¶ 37. Additionally, Plaintiff alleges that it "is an intended third-party beneficiary to the agreement, including all warranties contained therein, between the manufacturer and TOGNUM or MERRIT pursuant to which the marine engine systems may have been manufactured and transferred to TOGNUM and/or the vessel manufacturer." *Id.* at ¶ 38. Plaintiff asserts that it is not in possession of said contract or agreement, but that Defendants do have it. *Id.*

On or about June 4, 2011, Plaintiff claims to have sea tried the Vessel for the first time and discovered that Defendants' engine systems were "incompatible with the vessel and caused a very bad vibration problem that rendered the use of the vessel unsafe, and precluded the intended use of the vessel as a specialized Merrit sportfishing vessel." *Id.* at ¶ 43. Plaintiff reported the issues to Defendants, who carried out sea trials in July, August, September, and October of 2011

to ascertain the technical problems and find a solution. *Id.* at ¶ 44. Particularly, during a sea trial on August 11, 2011, in which one of the injectors on the starboard engine failed, a technician from Florida Detroit Diesel Allison sent MTU information about the engine systems. *Id.* at ¶ 45. Plaintiff claims that Tognum "agreed to replace" the failing injector. *Id.*

The Vessel was sea tried again on September 27, 2011, after the malfunctioning injector was replaced, but another injector failed. *Id.* at ¶ 47. Plaintiff also claims that at this sea trial, the injection pump was "running hot." *Id.* On September 29, 2011, an engineer from Tognum, Joran Krawczak ("Krawczak") performed a sea trial and acknowledged the vibrations and performed a series of tests, the results of which were sent to Tognum. *Id.* That day two more injectors were replaced. *Id.* at ¶ 48. On October 10, 2011, the fuel pump was replaced. *Id.* On October 14, 2011, during another sea trial, Chris Cornell from Cornell Balancing Company, Inc., a technician recommended by Tognum, performed a vibration analysis and noted the excessive vibration. *Id.* at ¶ 49.

At the 2011 Fort Lauderdale Boat Show, Plaintiff's representative Andrew Machata ("Machata") met with Steven Neil (Senior Manager of Marine Service for Tognum), David Clapp (also of Tognum), and Ryan Kamphuis (EMNS[1] for Tognum) to discuss the problems with the Defendants' engine systems. *Id.* at ¶ 50. Plaintiff claims that at this meeting Steven Neil, who represented himself as having the authority to make decisions as to warranty repairs to Defendants' engines, asked whether Plaintiff would be satisfied with all new injectors. *Id.* at ¶ 51. Machata explained that he only wanted defective parts to be replaced, and the parties agreed that Tognum would "take injectors and the ECM[2] from another used engine and install them on

---

[1] No definition of "EMNS" is provided in the Second Amended Complaint.

[2] No definition of "ECM" is provided in the Second Amended Complaint.

the starboard engine on board the Vessel" to determine if this replacement would solve the vibration problems. *Id.* Plaintiff asserts that the parties also agreed that if replacing these parts reduced the vibration, Tognum would "replace all of the injectors on the starboard engine with new injectors," and if it did not, Tognum would send the injectors to Germany to test them to see if a balanced set of injectors could be obtained that could eliminate the vibration problem. *Id.* at ¶ 52. The testing of the new injectors would take place in one week from the meeting and the other proposed solutions would take place immediately thereafter. *Id.*

The used injectors from another engine were installed on the Vessel on November 1, 2011. *Id.* at ¶ 53. Tognum refused to replace the ECM at this time and at first threatened to void the warranty if Plaintiff installed an ECM retrieved by Florida Detroit Diesel Allison. *Id.* Finally, after some conversations with Tognum, the ECM was installed and another test was performed on January 18, 2012. *Id.* at ¶¶ 53-54. With the installation of the injectors and the ECM, the vibrations on the Vessel allegedly decreased by 50%. *Id.* at ¶ 54. Plaintiff claims that Defendants refused to install new injectors on the starboard engine despite the apparent success of the replacement of the injectors. *Id.* at ¶ 55. Bernard Bentgen, who represented himself as "Director of Marine Sales for Tognum America," told Plaintiff that Tognum would not be installing new injectors. *Id.*

Plaintiff alleges to have continued to pursue the warranty claim and that in August of 2012, Tognum agreed to replace the injectors with new injectors of the same kind. *Id.* at ¶¶ 57-58. However, Plaintiff was aware Defendants had "redesigned and recalibrated the injectors as a result of similar complaints" and requested that Tognum replace the injectors on the Vessel with the newly designed injectors. *Id.* at ¶ 58. Plaintiff claims that Tognum agreed with this condition and that the parties "moved forward to address the logistics" of the installation of the

new injectors. *Id.* Plaintiff alleges that despite this agreement, Defendants refused to install the newly calibrated injectors, saying that they would "only replace the Plaintiff's injectors with the injectors of the same model that were originally equipped with the engines." *Id.* at ¶ 59.

Plaintiff also claims to have requested all the information collected by Defendants during the various sea trials of the Vessel to "enable the Plaintiff to establish its claim in this action, and to facilitate the repair of the Plaintiff's engines using another vendor given that the Defendants herein refuse to honor the Plaintiff's claim." *Id.* at ¶ 62. Defendants allegedly have refused to provide Plaintiff with this information. *Id.* at ¶ 63. Finally, Plaintiff claims that without repairs the Vessel is "unsafe, cannot be used and has been rendered a total loss." *Id.* at ¶ 64.

Plaintiff filed its Second Amended Complaint alleging against both Defendants: (I) violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.211 *et seq.* ("FDUTPA"); (ii) negligence; (iii) breach of contract; (iv) breach of UCC express warranty; (v) breach of UCC and Magnuson-Moss Express Written Warranty; (vi) breach of UCC and Magnuson-Moss Implied Warranty of Merchantability and Usage of Trade; (vii) breach of UCC and Magnuson-Moss Implied Warranty of Fitness for a Particular Purpose; and (viii) breach of oral contract and covenant of good faith and fair dealing against Defendants. (D.E. No. 36). For the reasons explained below, this Court dismisses Counts III-VII of Plaintiff's Second Amended Complaint as to Defendant Tognum. This Court further dismisses Count I as to both Defendants. All other Counts shall proceed against the appropriate Defendant(s).

## II. Legal Standard

"When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *Lopez*

*v. First Union Nat'l Bank of Fla.*, 129 F.3d 1186, 1189 (11th Cir. 1997)). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007) (quoting Fed. R. Civ. P. 8; *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Thus, a plaintiff is not required to make detailed factual allegations; however, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S.Ct. at 1964-65. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Factual allegations must be enough to raise a right to relief above the speculative level . . .on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965.

### III. Authenticity of Warranty

Plaintiff asserts that the authenticity of Defendants' warranty is disputed and, as such, it did not attach a copy of the warranty to its Second Amended Complaint. (D.E. No. 45 at 2). Specifically, Plaintiff "challenges the authenticity and completeness of the warranty attached to Defendants' motion" because Plaintiff "will not know what exact warranty was issued (and the parties to the warranty) until such time as discovery has been completed on the issue." *Id.* at 2. Accordingly, Plaintiff asks this Court to deny Defendants' motion to dismiss "insofar as the Defendants' argument is based on the authenticity, scope and completeness of the warranty attached." *Id.*

"[A] document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1)

central to the plaintiff's claim; and (2) undisputed." *Horsley v. Feldt,* 304 F.3d 1125, 1134 (11th Cir. 2002). "'Undisputed' in this context means that the authenticity of the document is not challenged." *Id.* "[A] document need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, [the court] may consider such a document provided it meets the centrality requirement." *Day v. Taylor,* 400 F.3d 1272, 1276 (11th Cir. 2005).

Although Plaintiff referred to a warranty in its Second Amended Complaint, it did not attach such document. Defendants attached a copy of a warranty to their motion to dismiss (D.E. No. 42-1). However, Plaintiff attached a different warranty to its surreply. (D.E. No. 74-1 at 2). Plaintiff alleges that Steven Neil, a Tognum representative, attached this warranty to an email concerning the repairs that needed to be done to the Vessel. (D.E. No. 74 at 5-6). Because two different warranties have been filed on the record and there is not agreement between the parties as to which is authentic, this Court finds that the authenticity of the warranty is disputed. As such, this Court will not consider the warranty in ruling on the motion to dismiss.

## IV. Count I: FDUPTA Violation

Plaintiff alleges that Defendants' conduct violated FDUTPA and as a result of this conduct, Plaintiff suffered damages. (D.E. No. 36 at 20-21). Under Florida Statute Section 501.204 "unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are" unlawful. This Court finds that Plaintiff has not sufficiently pled a claim under FDUPTA and grants Defendants' motion to dismiss as to Count I.

"A consumer claim for damages under FDUPTA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Henderson v. Demars*, No. 11-80589 CIV, 2013 WL 1176251, at *16 (S.D. Fla. March 20, 2013). "FDUTPA requires proof of each

individual plaintiff's actual . . . damage and defendant's causation of damage, requiring evidence regarding how specific misrepresentations to individual . . . customers decreased the value of their deal." *Miami Auto. Retail, Inc. v. Baldwin*, 97 So. 3d 846, 857 (Fla. 3d DCA 2012). A sufficiently pled FDUTPA claim alleges "acts which the complaint describes as 'unfair' and 'unconscionable' and which allegedly involved defendants' 'stalling' and attempting 'to avoid [their] obligation' to plaintiffs." *Yvon v. Baja Marine Corp.*, 495 F. Supp. 2d 1179, 1184-85 (N.D. Fla. 2007). Moreover, "in order for the consumer to be entitled to any relief under FDUTPA, the consumer must not only plead and prove that the conduct complained of was unfair and deceptive, but the consumer must also plead and prove that he or she was aggrieved by the unfair and deceptive act." *Macias v. HBS of Florida, Inc.*, 694 So. 2d 88, 90 (Fla. 3d DCA 1997); *see also Urling v. Helms Exterminators, Inc.*, 468 So. 2d 451, 454 (Fla. 1st DCA 1985) ("The act is intended to protect a consumer from unfair or deceptive acts or practices which diminish the value or worth of the goods or services purchased by the consumer.").

Defendants rightfully assert that "Plaintiff fails to specify precisely what statements were made; whether the statements were oral or written; the person(s) who made the statements . . . the content of each statement; and the manner in which each statement misled the Plaintiff." (D.E. No. 42 at 6). Although Plaintiff sufficiently alleges that Defendants' conduct "caused damage to property other than the parts and equipment provided by" Defendants, including the "hull of the vessel," Plaintiff has failed to plead the first two elements required for a consumer claim for damages under FDUPTA. (D.E. No. 36 at ¶ 80). Plaintiff's Second Amended Complaint simply refers to "knowing and material misrepresentation of facts material to the purchase of goods in trade or commerce and to the Plaintiff's decision (and to the consuming public's decision for that matter), with respect to the purchase, design, fabrication, inspection, warranty, repair,

installation, and servicing of marine engine systems within the State of Florida." (D.E. No. 36 at ¶ 73). Plaintiff at no time refers to specific misrepresentations or actions by Defendants. Accordingly, this Court finds that Plaintiff has failed to sufficiently plead that Defendants engaged in specific misrepresentations constituting such deceptive or unfair acts and how such acts caused Plaintiff to suffer damages. As such, this Court grants Defendants' Motion to Dismiss as to Count I.

V.      **Count II: Negligence**

Plaintiff alleges that Defendants failed to "act with reasonable care with respect to" the manufacturing of the marine engine system installed in its Vessel. (D.E. No. 36 at ¶ 82). Defendants claim that Plaintiff cannot recover damages against them because Plaintiff has not alleged "personal injury or damages to other property" as a result of Defendants' actions. (D.E. No. 42 at 8). Specifically, Defendants argue that the economic loss rule causes Plaintiff's claim to fail as a matter of law. *Id.* However, this Court finds that Plaintiff has pled facts that would make the economic loss rule inapplicable and, as such, this Court denies Defendants' Motion to Dismiss as to Count II of Plaintiff's Second Amended Complaint.

The economic loss rule applies even when there is no privity between the parties. *Airport Rent-A-Car, Inc. v. Prevost Car, Inc.*, 660 So. 2d 628, 631 (Fla. 1995). Under the economic loss rule a plaintiff cannot pursue a tort action against a product manufacturer if he cannot allege personal injury or damage to other property. *Indem.. Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 891 So. 2d 532, 536 (Fla. 2004). In other words, the economic loss rule applies when the only damage the plaintiff claims is the product damaging itself. *Id.* at 538. However, when a case "does not involve a cause of action against a manufacturer or distributor for economic loss caused by a product which damages itself" then the "economic loss rule is

inapplicable." *Id.* at 541. This is true whether the parties are connected by privity or not. *Id.*

Defendants argue that "Plaintiff merely seeks 'damages, including punitive damages, together with interest, costs, and attorney fees.'" (D.E. No. 42 at 10). Plaintiff, however, claims that Defendants' negligence "has proximately caused damage to property other than the parts and equipment provided by" Defendants, including the hull of the vessel. (D.E. No. 36 at ¶ 93). Plaintiff further claims to have "spent in excess of $ 175,000" working with Defendants "developing a cure for the problem created by" Defendants. *Id.* Finally, Plaintiff also claims that the damages caused by Defendants' "engine system cannot be repaired correctly without hauling and dismantling the vessel and will likely take months to complete." *Id.* This Court finds that Plaintiff sufficiently pled damages other than the engine system damaging itself. As such, the economic loss rule does not apply in the instant case and Plaintiff may pursue it's negligence claim. For these reasons, this Court denies Defendants' Motion to Dismiss as to Count II for negligence.

## VI.     Count III: Breach of Contract

Plaintiff claims that Defendants "had a contractual duty to repair or replace the defective starboard engine during the warranty period by virtue of their written warranty." (D.E. No. 36 at ¶ 95). Defendant Tognum moves to dismiss on the basis of lack of privity between Plaintiff and Tognum. This Court agrees with Defendant Tognum and finds dismissal of Count III as to Tognum appropriate.

"[I]n order to recover for the breach of a warranty either express or implied, the plaintiff must be in privity of contract with the defendant." *Weiss v. Johansen*, 898 So. 2d 1009, 1012 (Fla. 4th DCA 2005) (citations omitted). Privity is established when the plaintiff contracts directly with the defendant dealer or manufacturer. *Bailey v. Monaco Coach Corp.*, 168 F.

App'x. 893, 894 (11th Cir. 2006).

In the Second Amended Complaint, Plaintiff addresses only the substantive text of the written warranty that allegedly covers Defendants' engine systems. Specifically, Plaintiff states:

> Defendants' engine systems, including those installed on the M/Y "Destiny," were sold to the general public, including Plaintiff, with a written warranty providing that the Defendants' engine system would be free from defects in material and workmanship for a period of 24 (twenty-four) months from the date of delivery to the first retail purchaser.

*Id.* at ¶ 36. Plaintiff fails to allege an exact or approximate date in which the defective engine system was delivered to its retail purchaser, or when Plaintiff acquired same. In fact, Plaintiff fails to plead any information about the acquisition of the Vessel or Defendants' engine system. Plaintiff alleges that before its Vessel was "manufactured and sold" to Plaintiff, MTU sold the defective engine systems to "Tognum for resale to vessel manufacturers and the general public." *Id.* at ¶ 34. However, Plaintiff also alleges that the engine systems were "sold to the general public, including the Plaintiff." *Id.* at ¶ 36. Plaintiff does not allege to have directly bought the engine systems from Tognum.

Plaintiff's Second Amended Complaint seems to imply that Plaintiff bought the Vessel from either a vessel retailer or a vessel manufacturer that bought the defective engines from Tognum, which in turn bought the engine systems from MTU. *Id.* at ¶ 34. Because of the vague and contradictory nature of Plaintiff's allegations, this Court is unable to infer privity between Plaintiff and Defendant Tognum even when looking at the alleged facts in a light most favorable to Plaintiff. Therefore, this Court dismisses Count III for breach of contract against Defendant Tognum.

### VII. Counts IV and V: Breach of Express Warranty

Plaintiff alleges that Defendants breached their express warranty under Florida Statute Section 672.313 (Count IV) and the Magnuson-Moss Warranty Act ("MMWA") (Count V).

-11-

(D.E. No. 36 at 27-35). Defendant Tognum argues that Plaintiff has failed to adequately allege privity between the two to sustain a claim for breach of express warranty. (D.E. No. 42 at 14). This Court agrees.

Under Florida law, privity is "required for actions premised on express warranties." *Yvon v. Baja Marine Corp.*, 495 F. Supp. 2d 1179, 1184 (N.D. Fla. 2007) (citing *T.W.M. v. Am. Med. Sys., Inc.*, 886 F. Supp. 842 (N.D. Fla. 1995)). Although there are limited instances in which privity can be found without a contract, it does not appear that Plaintiff has alleged enough facts that would give rise to a finding of indirect or contacts-based privity. *Borchardt v. Mako Marine Int'l, Inc.*, No. 08-61199-CIV, 2011 WL 2084177, at *2 (S.D. Fla. 2011) (finding no privity because plaintiff failed to allege: (1) direct privity, (2) indirect privity through agents of the defendant manufacturer, (3) direct contacts with defendants that induced the sale, (4) "the voluntary creation of an express warranty running in favor of remote buyers," or (5) facts that support an assignment of warranty rights claim). As discussed above, Plaintiff's Second Amended Complaint fails to allege any type of privity between Plaintiff and Defendant Tognum. As such, Count IV for breach of express warranty fails as a matter of law as to Defendant Tognum.

With regard to Plaintiff's MMWA breach of express written warranty claim (Count V), this Court also finds the lack of alleged privity between Plaintiff and Defendant Tognum bars recovery. In particular,

> The Magnuson-Moss Warranty Act established federal standards in respect of both consumer implied warranties and written warranties. Under the terms of the MMWA, the definition of an implied warranty explicitly incorporates state law and thus, 'state law governs the existence and basic meaning of implied warranties.'

*Hill v. Hoover Co.*, No. 1:06-CV-00096-SPM, 2012 WL 4510855, at *6 (N.D. Fla. Oct. 1, 2012). "[I]n order to state a claim under the MMWA, the Plaintiff must adequately plead a cause of

action for breach of written or implied warranties under Florida law." *Id.* Some courts have found that, where the express warranty was clearly intended to extend coverage to subsequent owners, a breach of express warranty claim could be brought under the MMWA despite lack of privity. *See Mesa v. BMW of N. Am., LLC,* 904 So. 2d 450, 457-58 (Fla. 3d DCA 2005); *see also Fed. Ins. Co. v. Lazarra Yachts of N. Am., Inc.,* No. 8:09-CV-607-T-27MAP, 2010 WL 1223126, at *6 (M.D. Fla. March 25, 2010). However, Plaintiff does not allege that the warranty extended to subsequent purchasers. Because Plaintiff has failed to establish privity, as required under Florida law, this Court finds that Count V for breach of express warranty under the MMWA should be dismissed as to Defendant Tognum.

### VIII. Counts VI and VII: Breach of Implied Warranty

Plaintiff alleges that Defendants "impliedly warranted that the marine engine system to be installed on M/Y 'DESTINY' was of merchantable quality, fit, safe, and in a proper condition to be used with reasonable safety, efficiency and comfort," and Defendants subsequently breached this implied warranty. (D.E. No. 36 at ¶¶ 140-44). Defendants assert that "the implied warranty claims, as to Tognum, fail because of a lack of privity between Plaintiff and Tognum." (D.E. No. 42 at 14). Defendants further assert that "the MTU Warranty specifically disclaims any implied warranty unless confirmed by MTU in writing" and therefore Plaintiff's claims for breach of implied warranty fail as to both Defendants. *Id.* at 16.

"[C]ourts have uniformly held that Magnuson-Moss does nothing to alter or modify state law privity requirements. The question of whether privity is required thus hinges entirely on applicable state law." *Gill v. Blue Bird Body Co.*, 147 F. App'x 807, 810 (11th Cir. 2005). In Florida, "privity of contract is an essential element of a claim for breach of implied warranty." *Bailey v. Monaco Coach Corp.*, 168 F. App'x 893, 894 (11th Cir. 2006) (holding that there was

no privity between the parties because plaintiff "purchased the motor home from a dealer and not directly from [defendant]"); *see also e.g., Yvon v. Baja Marine Corp.*, 495 F. Supp. 2d 1179, 1183 (N.D. Fla. 2007); *Mesa v. BMW of N. Am., LLC*, 904 So. 2d 450, 458 (Fla. 3d DCA 2005); *Rentas v. Daimler-Chrysler Corp.*, 936 So. 2d 747 (Fla. 4th DCA 2006).

As explained above, Plaintiff has not alleged that there is privity between it and Defendant Tognum. Additionally, Plaintiff's assertions as to direct liability, agency, joint venture/strategic partnership and adoption between Defendants are mere conclusory allegations as they do not allege precisely the basis for such relationships. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). For these reasons, this Court grants Defendants' Motion to Dismiss as to Counts VI and VII for breach of implied warranty against Defendant Tognum.

As to Defendant MTU, Defendants assert that "the MTU Warranty specifically disclaims any implied warranty unless confirmed by MTU in writing." (D.E. No. 42 at 16). However, this type of general exclusion of an implied warranty, when there is an express warranty that covers the product, is not permitted by Section 672.316 of the Florida Uniform Commercial Code. Particularly, the Code requires that language excluding implied warranties be in writing, conspicuous, and specific. Fla. Stat. § 672.316(2) ("Language to exclude all implied warranties of fitness is sufficient if it states, for example, that 'There are no warranties which extend beyond the description on the face hereof.'").

Similarly, the MMWA prohibits suppliers from disclaiming or modifying "any implied warranty to a consumer with respect to such consumer product if (1) such supplier makes *any written warranty* to the consumer with respect to such consumer product." 15 U.S.C. § 2308(a).

Thus, the MMWA "'supplement[s] state-law implied warranties' by prohibiting their disclaimer in certain circumstances." *Fed. Ins. Co. v. Lazzara Yachts of N. Am., Inc.*, No. 8:09-CV-607-T-27-MAP, 2010 WL 1223126, at *7 (M.D. Fla. 2010) (quoting *Richardson v. Palm Harbor Homes, Inc.*, 254 F.3d 1321, 1325 (11th Cir. 2001)).

Thus, this Court finds that under the alleged circumstances and without an undisputed copy of the MTU warranty that covers the engines, MTU's disclaimer of implied warranty is not enough to dismiss Counts VI and VII as to MTU. Therefore, this Court denies Defendants' Motion to Dismiss Counts VI and VII for breach of implied warranty against Defendant MTU.

## IX. Breach of Oral Contract and Covenant of Good Faith and Fair Dealing

Plaintiff claims that during the 2011 Fort Lauderdale Boat Show, representatives from Defendants entered into an oral agreement with Plaintiff to fix the issues related to Defendants' engine systems. (D.E. No. 36 at ¶). Defendants argue that "no enforceable contract exists and thus, there is no contractual provision to which Plaintiff can attach any implied covenant of good faith and fair dealing." (D.E. No. 42 at 18). Defendants further argue that "Plaintiff's breach of oral contract claim fails pursuant to the Statute of Frauds because the MTU Warranty period was over one (1) year." *Id.* at 17. Plaintiff argues that the breach of covenant of good faith and fair dealing relates to every contract asserted in the complaint rather than only the alleged oral contract. This Court finds that Count VIII should not be dismissed.

"An oral contract . . . is subject to the basic requirements of contract law such as offer, acceptance, consideration and sufficient specification of essential terms." *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004). Further,

> Under Florida law, every contract contains an implied covenant of
> good faith and fair dealing, requiring that the parties follow
> standards of good faith and fair dealing designed to protect the
> parties' reasonable contractual expectations." *Centurion Air Cargo,*

> *Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1151 (11th Cir. 2005). A breach of the implied covenant of good faith and fair dealing is not, however, an independent cause of action. *Id.* Rather, the implied covenant of good faith and fair dealing attaches to the performance of a specific contractual obligation. *Id.*

*Intercoastal Realty, Inc. v. Tracy*, 706 F. Supp. 2d 1325, 1335-36 (S.D. Fla. 2010).

Based on the allegations in the Second Amended Complaint, it appears Plaintiff has sufficiently pled the basis of an oral contract which occurred at the 2011 Fort Lauderdale Boat Show. (D.E. No. 36 at ¶¶ 160-175). Specifically offer, acceptance and consideration are sufficiently pled. *See id.* at ¶¶ 161, 162, 166. Particularly, Plaintiff alleges the parties agreed to test the engine with new injectors "which was to take place within one week" and if this did not solve the engine problems, the injectors would be sent to Germany to test them "immediately after the testing with the new injectors." *Id.* at ¶ 162. These allegations relate to the existence of an oral contract to repair the engine systems within a reasonably short period of time. As such, at this time, it does not appear that Florida's statute of frauds is implicated.[3] Accordingly, dismissal of Count VIII is not appropriate.

Finally, this Court denies Defendants' Motion to Strike because it is too early in the proceedings to foreclose an award of punitive damages based on the pleadings. If appropriate, this Court will reconsider the issue of punitive damages after the parties have submitted further evidence on the claims. It is hereby:

**ORDERED and ADJUDGED** that

1. Defendants' Motion to Dismiss (D.E. No. 42) is **GRANTED in part** and **DENIED in part**. The motion is **DENIED** as to Counts II and VIII and such Counts shall proceed against both Defendants. The motion is also **DENIED** only as to Defendant MTU as to Counts VI and

---

[3] Florida's statute of frauds which requires that "[n]o action shall be brought . . . upon any agreement that is not to be performed within the space of 1 year from the making thereof . . . ." Fla. Stat. § 725.01.

VII and, as such, Counts VI and VII shall proceed against Defendant MTU but such Counts are dismissed as to Defendant Tognum. The motion is **GRANTED** as to Count I which is dismissed without prejudice as to Defendants Tognum and MTU. The motion is also **GRANTED** as to Counts III, IV, and V which are dismissed without prejudice only as to Defendant Tognum.

    2. Defendants' Motion to Strike Plaintiff's Demand for Punitive Damages (D.E. No. 42 at 20) is **DENIED.**

    DONE AND ORDERED in Chambers at Miami, Florida, this ___ day of April, 2013.

                                          JOSE E. MARTINEZ
                                          UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Lynch
All Counsel of Record